## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

---

**ASBESTOS WORKERS LOCAL 24
MEDICAL FUND**
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

and

**RONALD S. SHEGOGUE, SCOTT
GRANT, BRIAN S. CAVEY, ROBERT S.
MCCOURT, JONATHAN POTTER**, and
**KEVIN P. ORCHARD**
as Trustees of the
ASBESTOS WORKERS LOCAL 24
MEDICAL FUND
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

and

**ASBESTOS WORKERS LOCAL 24
PENSION FUND**
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

and

**BRIAN S. CAVEY, JONATHAN
POTTER, MIKE MONEYMAKER
FORREST WARMAN, RICK SCHMID,
and RICK PUMPHREY**
as Trustees of the
ASBESTOS WORKERS LOCAL 24
PENSION FUND
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

Civil Action No. 1:19-cv-338

**Additional Required Service under
29 U.S.C. § 1132(h) to:**

**U.S. Department of Labor
Attn: Assistant Solicitor
 for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20210**

**U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220**

and

**ASBESTOS WORKERS LOCAL 24
APPRENTICESHIP FUND**
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

and

**BRIAN S. CAVEY, WILFREDO MATA,
ROBERT MCCOURT, FORREST
WARMAN, MATTHEW STILLITANO
and KEN GRAVES**
as Trustees of the
ASBESTOS WORKERS LOCAL 24
APPRENTICESHIP FUND
7130 Columbia Gateway Drive, Suite A
Columbia, Maryland 21406
Howard County

and

**ASBESTOS WORKERS LOCAL 24
ADVANCEMENT & ADVOCACY FUND**
901 Montgomery Street
Laurel, Maryland 20707
Prince George County

and

**BRIAN S. CAVEY, SCOTT GRANT,
MIKE MONEYMAKER and
RONALD S. SHEGOGUE**
as Trustees of the
ASBESTOS WORKERS LOCAL 24
ADVANCEMENT & ADVOCACY FUND
901 Montgomery Street
Laurel, Maryland 20707
Prince George County

                                    *Plaintiffs,*

vs.

2

**LAND COAST INSULATION, INC.**
4017 Second Street
New Iberia, LA 70560

Registered Agent:
Cogency Global Inc.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, LA 70816
                                      *Defendant.*

## COMPLAINT UNDER ERISA FOR OUTSTANDING EMPLOYER CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES AND INJUNCTIVE RELIEF

### Introduction, Jurisdiction and Venue

1.      This is a civil action brought by the Trustees of four employee benefit plans pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g) and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185(a) to collect unpaid collectively bargained contributions, interest, and liquidated damages owed by Defendant Land Coast Insulation, Inc., ("Defendant," "Company," or "Land Coast"), and for injunctive relief to enforce Defendant's contractual and statutory obligations to provide payroll review records.

2.      Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and Section 301 of the LMRA, 29 U.S.C. § 185.  Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), as the Asbestos Workers Local 24 Medical Fund, the Asbestos Workers Local 24 Pension Fund, the Asbestos Workers Local 24 Apprenticeship Fund, and the Asbestos Workers Local 24

Advancement and Advocacy Fund are administered in this District and Defendant Land Coast Insulation transacts business in this District.

4.       Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this complaint will be served upon the Secretary of Labor and the Secretary of the Treasury by certified mail on or about the date of filing.

### Parties

5.       Plaintiff Asbestos Workers Local 24 Medical Fund ("Medical Fund"), is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing health care and other welfare benefits to eligible employees, their families and dependents.  The Medical Fund was established and exists pursuant to the collective bargaining agreements between the International Association of Heat and Frost Insulators and Allied Workers, Local 24 ("Union") and certain employers.  The Medical Fund is a jointly administered Trust Fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Medical Fund is administered at 7130 Columbia Gateway Drive, Suite A, Columbia, Maryland, 21406.

6.       Plaintiff Trustees of the Medical Fund, Robert S. McCourt, Brian Cavey, Jonathan Potter, Scott Grant, Ronald S. Shegogue, and Kevin P. Orchard, are the duly authorized Trustees of the Medical Fund, whose duty it is to administer the Medical Fund for the benefit of the participants and beneficiaries of the Medical Fund.  The Trustees are authorized and empowered to maintain this action.

7.       Plaintiff Asbestos Workers Local 24 Pension Fund ("Pension Fund"), is an employee pension benefit plan within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2),

and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. §

1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible

employees.  The Pension Fund was established and exists pursuant to the collective bargaining

agreements between the Union and certain employers, and provides two plans of benefits: a

defined benefit pension and a defined contribution pension.  The Pension Fund is a jointly

administered Trust Fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §

186(c)(5).  The Pension Fund is administered at 7130 Columbia Gateway Drive, Suite A,

Columbia, Maryland, 21406

8.      Plaintiff Trustees of the Pension Fund, Brian S. Cavey, Jonathan Potter, Mike

Moneymaker, Rick Pumphrey, Rick Schmid, and Forrest Warman, are the duly authorized

Trustees of the Pension Fund, whose duty it is to administer the Pension Fund for the benefit of

the participants and beneficiaries of the Pension Fund.  The Trustees are authorized and

empowered to maintain this action.

9.      Plaintiff Asbestos Workers Local 24 Apprenticeship Fund ("Apprenticeship

Fund"), is an employee welfare plan within the meaning of Section 3(1) of ERISA, 29 U.S.C. §

1002(1), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C.

§ 1002(37)(A), established and maintained for the purpose of providing job training benefits to

eligible employees and apprenticeship training to potential employees.  The Apprenticeship Fund

was established and exists pursuant to the collective bargaining agreements between the Union

and certain employers.  The Apprenticeship Fund is a jointly administered Trust Fund established

pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6).  The Apprenticeship Fund is

administered at 7130 Columbia Gateway Drive, Suite A, Columbia, Maryland, 21406.

10.     Plaintiff Trustees of the Apprenticeship Fund, Ken Graves, Brian S. Cavey, Robert McCourt, Forrest Warman, Matthew Stillitano, and Wilfredo Mata, are the duly authorized Trustees of the Apprenticeship Fund, whose duty it is to administer the Apprenticeship Fund for the benefit of the participants and beneficiaries of the Apprenticeship Fund.  The Trustees are authorized and empowered to maintain this action.

11.     Plaintiff Asbestos Workers Local 24 Advancement & Advocacy Fund ("Advocacy Fund") is a jointly administered labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), established and maintained for the purposes of, inter alia, improving communications between labor and management; exploring joint approaches to achieving organizational effectiveness; assisting labor and management in solving problems of mutual concern not susceptible to resolution within collective bargaining; studying ways to eliminate problems affecting the industry.  The Advocacy Fund was established and exists pursuant to the collective bargaining agreements between the Union and certain employers.  The Advocacy Fund is administered at 901 Montgomery Street, Laurel, Maryland, 20707.

12.     Plaintiff Trustees of the Advocacy Fund, Brian S. Cavey, Scott Grant, Mike Moneymaker, and Ronald Shegogue, are the duly authorized Trustees of the Advocacy Fund, whose duty it is to administer the Fund in accordance with its purpose.  The Trustees are authorized and empowered to maintain this action.

13.     Defendant Land Coast Insulation, Inc. ("Land Coast") is a corporation operating under the laws of the state of Louisiana, with a mailing address of 4017 Second Street, New Iberia, LA 70560, and transacting business in Maryland in the insulation industry.

14.     At all times herein, Defendant was an employer "in an industry affecting commerce" as defined in Sections 3(5), (9), (11), and (12) of ERISA, 29 U.S.C. §§ 1002(5), (9),

(11), and (12), and Sections 2(2), (6), (7) and Sections 501(1) and (3) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7), 142(1), (3).

## FACTUAL BACKGROUND

### The Parties and the Relevant Agreements

15.    In April 2016, Defendant became signatory to the National Construction Agreement, which is a collective bargaining agreement between the North American Contractors Association and the Building and Construction Trades Department, AFL-CIO (the "Union"). A true and correct copy of the National Construction Agreement is attached hereto as Plaintiffs' Exhibit A.

16.    Defendant became signatory to the National Construction Agreement by signing a Letter of Assent in which it "agree[d] to comply with all the terms and conditions of the National Construction Agreement" and signified its understanding that the National Construction Agreement was "binding on the undersigned Employer as though the Employer had signed the above referred to Agreement." A true and correct copy of the Letter of Assent is attached hereto as Plaintiffs' Exhibit B. As a result of Defendant's execution of the Letter of Assent to the National Construction Agreement, at all relevant times to this litigation, the Union has been the exclusive bargaining representative for all of the Defendant's employees performing covered work under the Agreement.

17.    The National Construction Agreement establishes the terms and conditions of employment for employees of signatory employers. Per Article 24, Section 24-1, the National Construction Agreement covers the period of August 1, 2002 through July 31, 2005 and continues in full force and effect from year to year thereafter unless changed or terminated. The National Construction Agreement remains in effect today. Ex. A, Art. 24-1.

18.     In accordance with the National Construction Agreement, Defendant must make contributions to the Medical Fund, Pension Fund, Apprenticeship Fund, and Advocacy Fund (collectively, the "Funds") in a specified amount for each hour that the Defendant is obligated to pay compensation to employees covered under the respective National Construction Agreements ("Covered Employment"). Ex. A, Art. 10-2.

19.     At Article 10, Section 10-2, the National Construction Agreement states that a signatory employer "agrees to pay employees benefit contributions as outlined in Appendix A." Ex. A, Art 10-2.

20.     Appendix A to the National Construction Agreement requires Defendant, effective February 29, 2016, to contribute $3.93 (three dollars and ninety-three cents) per hour to the Medical Fund for each hour of Covered Employment and to contribute $8.97 (eight dollars and ninety-seven cents) per hour to the Pension Fund for each hour of Covered Employment. A true and correct copy of Appendix A is attached hereto as Plaintiffs' Exhibit C. Of the $8.97 per hour due to the Pension Fund, $6.97 (six dollars and ninety-seven cents) is for the defined benefit fund and $2.00 is for the defined contribution fund. *See* Ex. C. Signatory employers are also required to remit contribution reports reflecting hours worked and wages paid for Covered Employment.

21.     Appendix A also requires Defendant to forward $.40 (forty cents) per hour to the Apprenticeship Fund for each hour of Covered Employment.  Of the $.40 per hour forwarded by an employer, $.20 (twenty cents) is to be an Employer contribution, and $.20 (twenty cents) is to be deducted from the Employee's pay.  *See* Ex. C.

22.     Appendix A also requires Defendant to forward $.15 (fifteen cents) per hour to the Advocacy Fund.  Of the $.15 per hour forwarded by an employer, $.10 (twenty cents) is to be an

Employer contribution, and $.05 (five cents) is to be deducted from the Employee's pay. *See* Ex. C.

23.    Defendant is also independently obligated to make contributions to the Funds pursuant to Section 515 of ERISA, 29 U.S.C. § 1145, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

## The Funds' Trust Agreement and Collection Policy

24.    In the National Construction Agreement and the Letter of Assent, Land Coast further agreed that "[t]he Employer adopts and agrees to be bound by the written terms of legally established trust agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such trust funds." Ex. A, Art. 10-2b; Ex. B.

25.    The Medical Fund exists pursuant to the terms of the Agreement and Declaration of Trust of the International Association of Heat and Frost Insulators and Asbestos Workers Local 24 Medical Fund (the "Medical Trust Agreement"). A true and correct copy of the Medical Trust Agreement is attached hereto as Plaintiffs' Exhibit D. Under Article XI, Sections E and F of the Medical Trust Agreement, the Medical Fund assesses interest, at a rate determined by the Trustees, and liquidated damages, at the rate of 20% of the delinquent amount, on underpaid and late paid contributions. Under Article XI, Section F of the Medical Trust Agreement, "[t]he Trustees are empowered to collect all amounts owed through any means they so choose."

26.    The Pension Fund exists pursuant to the terms of the Restated Trust Agreement of the International Association of Heat and Frost Insulators and Asbestos Workers Local 24 Pension Fund (the "Pension Trust Agreement"). A true and correct copy of the Pension Trust Agreement

9

is attached hereto as Plaintiffs' Exhibit E. The Pension Fund provides both defined benefit and defined contribution retirement benefits, subject to the type of contributions employers are contractually required to make. Under Article V, Section 3 of the Pension Trust Agreement, the Trustees are "empowered to demand, collect and receive Employer payments and all other money and property to which the Trustees maybe entitled" and may take any administrative or legal steps to do so that they deem in the Pension Fund's best interest. Under Article V, Section 5 of the Pension Trust Agreement, the Trustees may require the payment of liquidated damages and other costs and expenses arising out of delinquent contributions.

27.     The Apprenticeship Fund exists pursuant to the terms of the Agreement and Declaration of Trust of the International Association of Heat and Frost Insulators and Asbestos Workers Local 24 Apprenticeship Fund (the "Apprenticeship Trust Agreement"). A true and correct copy of the Apprenticeship Trust Agreement is attached hereto as Plaintiffs' Exhibit F. Under Article IV, Section 2 of the Apprenticeship Trust Agreement, "[t]he Trustees may compel and enforce the payment of the contributions in any manner which they may deem proper; and the Trustees may make such additional rules and regulations to facilitate and enforce the collection and payment thereof as they may deem appropriate."

28.     The Advocacy Fund exists pursuant to the terms of the Agreement and Declaration of Trust establishing the Asbestos Workers Local 24 Industry Advancement and Advocacy Fund (the "Advocacy Trust Agreement"). A true and correct copy of the Apprenticeship Trust Agreement is attached hereto as Plaintiffs' Exhibit G. Under Article V, Section a.xiii of the Advocacy Trust Agreement, the Trustees are empowered to "initiate on behalf of the Fund such lawsuits and other legal proceedings as the Board deems necessary or appropriate."

29.     In order to implement and execute the terms and conditions of the Funds, the Trustees of the Pension, Medical, Apprenticeship, and Advocacy Funds published and adopted a joint collection policy establishing the steps and responsibilities of the Trustees, the Funds' administrators, the attorneys and auditors in the collections process.  A true and correct copy of the joint Collection Policy is attached hereto as Plaintiffs' Exhibit H.

30.     Pursuant to the Collection Policy, Defendant is required to submit contributions and reports to the Funds on or before the fifteenth day of each month for payroll periods ending the previous month.   Ex. H, Contributions, Sec. 1.

31.     In addition, pursuant to the Collection Policy, Defendant is required to pay interest and liquidated damages on all untimely contributions or failures to contribute. Specifically, Defendant is required to pay interest at the rate of 18% per annum, and liquidated damages assessed in the amount that is the greater of the amount of interest charged or 20% of the delinquent amount.  *See* Ex. H, Contributions, Sec.5.

32.     Pursuant to the Collection Policy, Defendant is also required to pay the Funds' "costs and expenses of litigation, including attorneys' fees." Ex. H, Miscellaneous, Sec. 1.

33.     Pursuant to Section 502(g) of ERISA, if judgment is entered against Defendant, Plaintiff Funds are entitled to an award of unpaid contributions; interest on the unpaid contributions; an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the terms of the Funds' plans; reasonable attorneys' fees and costs, and other legal or equitable relief as deemed appropriate by the court.

### Defendant's Delinquencies

34.     Defendant is delinquent in its monthly contributions to the Funds for certain months from June 2016 through June 2018.

11

35.     Land Coast remains delinquent in its contributions to the Medical Fund for the period of June 2016 through September 2016, for which Land Coast owes $7,667.39 in contributions. As a result of those delinquencies and of previous late contributions for the contribution months between June 2016 through March 2017, Land Coast also owes $59,453.89 in liquidated damages and $13,943.04 in interest.

36.     As a result of previous late contributions to the Pension Fund for the contribution months from August 2016 through March 2017, Land Coast owes $106,240.99 in liquidated damages and $30,942.88 in interest to the Pension Fund.

37.     As a result of previous late contributions to the Apprenticeship Fund for the contribution months between August 2016 through March 2017, Land Coast owes $6,901.35 in liquidated damages and $5,315.38 in interest to the Apprenticeship Fund.

38.     Pursuant to the Collections Policy and Section 502(g) of ERISA, interest will continue to accrue until all delinquent amounts are paid in full.

39.     Fund records show that Land Coast also failed to remit $1,085.15 in employee contributions to the Advocacy Fund for the months of June 2016 and August 2016.

**The Fund's Audit Request**

40.     The respective Trust Agreements of the Funds empower the Trustees to examine the payroll records and books of any participating employer when deemed necessary for the administration of the Funds. Ex. D, Art. XI, Sec. C; Ex. E, Art. V, Sec. 4; Ex. F, Art. IV, Sec. 6. In addition, the Collection Policy requires that Employers cooperate with the Funds' requests for audit of their records and establishes the steps and responsibilities of the Trustees, the Plan administrators, the Funds' attorneys, and the auditors in the collections process. Ex. H, Audits. The purpose of an audit to verify the employer's self-reporting of hours of Covered Employment

and therefore ensure that such employer has remitted the appropriate amount of contributions to the Funds on behalf of each applicable employee. The Collection Policy states that if an under-payment is discovered as the result of an audit, the employer is responsible for paying the cost of the audit in addition to interest and liquidated damages on the underpaid amounts. Ex. H, Audits, Sec. 5.

41.    On April 18, 2018, the Funds' auditor notified Defendant via letter that it was randomly selected for an audit of the period from January 1, 2015 to December 31, 2017.  A true and correct copy of the audit demand letter is attached hereto as Plaintiffs' Exhibit I. The letter directed the Defendant to make available certain accounting and tax documents pursuant to the audit, including:

a.   A listing of all employees of the Company, including the last four digits of their Social Security Number and Job Classification

b.   Cash Disbursement journals

c.   Payroll journals and registers

d.   Any time summary reports necessary to verify the flow of timesheets into the payroll registers

e.   Employee timesheets

f.   Employee detail and summary payroll reports

g.   Payroll tax preparation reports

h.   Quarterly payroll tax returns on form 941

i.   Quarterly State Unemployment tax reports

j.   Quarterly workers' compensation reports

k.   Employee contribution records

l.   Reports and contributions submitted to the Funds

m.   Employees' W-2 forms and Company's W-3 forms

n.   Forms 1099 and 1098 prepared by the Company

o.   A listing of all jobs, identified separately by location, which included covered work, including: the city and street address of each job site, number of employees working at each job site, the general and all sub-contractors on each job site, and total covered and non-covered payroll relating to the job site.

p.   Invoices relating to any work performed by the Company which is covered by the applicable collective bargaining agreements

q.   Cancelled checks or other proof of payment received relating to work performed by the Company, which is covered by the applicable collective bargaining agreements

r.   Corporate documents

s.   A listing of the officers of the Company

t.   Agreements with sub-contractors and affiliated entities

Ex. I.

42.      Defendant failed to respond to this letter. The Funds' reiterated the request for audit documentation on June 29, 2018 via another letter. Despite these repeat requests, Defendant has ultimately failed and refused to provide the necessary documents in response to the Funds' requests.

43.      Under Section 502(g) of ERISA, the terms of the Collections Policy and the terms of the Trust Agreements, Plaintiffs are also entitled to recover all costs of this action from Defendant, including reasonable attorneys' fees and court costs.

## COUNT I - Delinquencies

14

44.     Plaintiffs reallege and incorporate Paragraphs 1 through 43.

45.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185; the Funds have standing to sue under Section 301 as third-party beneficiaries of a collective bargaining agreement.

46.     Pursuant to federal law and as a result of its breach of the terms of the National Construction Agreement and the Funds' Trust Agreements and Collection Policy, Defendant owes $7,667.39 in contributions, $59,453.89 in liquidated damages, and $13,943.04 in interest to the Medical Fund.

47.     Pursuant to federal law and as a result of its breach of the terms of the National Construction Agreement and the Funds' Trust Agreements and Collection Policy, Defendant owes $106,240.99 in liquidated damages and $30,942.88 interest to the Pension Fund.

48.     Pursuant to federal law and the terms of the National Construction Agreement and the Funds' Trust Agreements and Collection Policy, Defendant owes $6,901.35 in liquidated damages and $5,315.38 interest to the Apprenticeship Fund.

49.     Pursuant to federal law and as a result of its breach of the terms of the National Construction Agreement and the Fund's Trust Agreements, Defendant owes and failed to remit the Funds $1,085.15 in employee contributions due to the Asbestos Workers Local 24 Industry Advancement and Advocacy Fund.

50.     Prior to commencing this lawsuit, the Funds sent several letters and attempted to directly contact Defendant in an attempt to obtain the outstanding amounts.  Defendant continues to refuse to make payment on the amounts due. There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Funds, and pay the amounts owed.

51.     Under Section 502(g) of ERISA and as a result of its breach of the terms of the National Construction Agreement and the Funds' Trust Agreements and Collection Policy, Plaintiffs are entitled to recover all costs of this action from the Defendant, including reasonable attorneys' fees and court costs.

## COUNT II – Audit Compliance

52.     Plaintiffs reallege and incorporate Paragraphs 1 through 51.

53.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

54.     Pursuant to the Funds' respective Trust Agreements and the joint Collection Policy, as well as Defendant's obligations under the applicable collective bargaining agreement and under ERISA, Defendant is obligated to provide information so that the Funds may perform an audit to verify that Defendant has remitted the appropriate amount of contributions to the Funds for the period from January 1, 2015 to December 31, 2017.

55.     Prior to commencing this lawsuit, the Funds sent several letters and attempted to directly contact Defendant to obtain the documentation necessary to perform audits for the period of January 1, 2015 to December 31, 2017.  Defendant has not responded to these letters with the documents requested.  There is little prospect that, lacking judicial compulsion, Defendant will satisfy its obligations to the Funds.

56.     Under Section 502(g) of ERISA and as a result of its breach of the terms of the National Construction Agreement and the Funds' Trust Agreements and Collection Policy, Plaintiffs are entitled to recover all costs of this action from the Defendant, including reasonable attorneys' fees and court costs.

**WHEREFORE**, Plaintiffs pray for Judgment as follows:

16

1. Declare Defendant has breached its collective bargaining agreement by failing to timely remit owed contributions, interest, and liquidated damages to the Funds pursuant to the National Construction Agreement;

2. Award Plaintiffs judgment against Defendant for $8,752.54 in contributions, $50,201.30 in interest and $172,596.23 liquidated damages;

3. Order Defendant to provide such information as is requested by the Funds in order to perform an audit of the Defendant for the period from January 1, 2015 to December 31, 2017;

4. Award Plaintiffs costs and reasonable attorneys' fees, pursuant to section 502(g)(2) of ERISA; 29 U.S.C. § 1132(g)(2);

5. Award additional pre and post judgment interest on the amounts awarded above until the date of payment;

6. Retain jurisdiction of this case pending compliance with its Orders; and

7. Grant such other relief as the Court may deem appropriate.


Respectfully Submitted,

  /s/ Andrew K. Lin
Andrew K. Lin, Bar No. 18326
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC
(202) 783-0010 (tel)
(202) 783-6088 (fax)
alin@mooneygreen.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 5th day of February, 2019, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, INJUNCTIVE RELIEF, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

_____/s/ Andrew K. Lin____
Andrew K. Lin